UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| COLIN LACRUE, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VEXUS FIBER, LLC,<br><br>Defendant. | Case No. |

**CLASS ACTION COMPLAINT**

Plaintiff Colin LaCrue, by and through his counsel, and for his Class Action Complaint against Defendant Vexus Fiber, LLC ("Vexus"), alleges as follows:

**NATURE OF THE ACTION**

1. Plaintiff bring this proposed class action on behalf himself and similarly situated consumers against Vexus arising from its routine bait-and-switch scheme of deceiving consumers with fictitiously low-price advertisements for its broadband internet service and then automatically adding on a "Network Access Fee" (the "NAF"), which artificially inflates the true cost of Defendant's internet service.

2. Defendant mischaracterizes its NAF as a valuable feature of contracting with Vexus, in that the NAF "provides access to the Vexus network and technology

1

and enables us to continue to invest in our network and infrastructure to deliver the best technology and services to our customers."[1]

3. But behind the guise of Defendant's benevolence is the reality that the NAF is implemented solely to extort more money from its customers.

4. This is true because customers are not offered the option to elect out of the NAF, which is unequivocally charged whether the customer's network and infrastructure needs—or ever even receives—the "invest[ment]" or if they need whatever updated "technology" and "services" are purportedly provided in exchange for the fee.

5. Rather than simply adding the mandatory NAF to the advertised price of the internet service itself, Vexus secretly tacks on the NAF as line item separate from the basic contract price of the internet service. The reason for charging its NAF in this manner is clear: the only price that consumers consider and rely upon when conducting price comparisons with similar service providers is obviously the internet service's advertised price. Reasonable consumers cannot be expected to ferret out these hidden fees that automatically increase the true price of the internet service due to their mandatory nature.

6. Vexus' NAF is a classic example of a company-imposed "junk fee" and serves solely as a profit generator. Indeed, depending on whichever specific internet service plan a customer selects, Vexus' NAF can represent as much as **33%** of the advertised cost the internet service itself.

---

[1] *What is the Network Access Fee?,* https://www.vexusfiber.com/residential/customer-care/customer-faqs/ (last accessed August 22, 2024).

7. In fact, in recognition of the potential for deception, the Federal Trade Commission has recently banned this practice. Specifically, the FTC has cautioned against "misleading door openers," calling such price advertisements "deceptive":

> [I]nternet service providers routinely do not include internet service fees, such as installation and activation fees, equipment fees, penalties for exceeding data caps, and early termination fees, in advertised prices, ***and that these fees should be considered as part of the true monthly cost of internet service that should be incorporated into advertised prices*** or prohibited when they are arbitrary or do not reflect added value.

*Trade Regulation Rule on Unfair or Deceptive Fees,* 88 Fed. Reg. 77420, 77432 (proposed Nov. 9, 2023) (to be codified at 16 C.F.R. § 464) (emphasis added).

8. Worse yet, Vexus fails to adequately disclose the NAF to its customers in its advertisements, and customers do not discover the true cost of their internet service until after signing up or sometimes, even later on when they receive their bill.

9. By unfairly obscuring the true cost of its internet service, Vexus deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true Internet Service costs.

10. As a result, Plaintiff and Class members have been injured by Defendant's deceptive and fraudulent practices. Plaintiff brings this action on behalf of himself and the putative Class and seeks actual damages, punitive damages, and injunctive relief to prevent Defendant from continuing to engage in its illegal practice described herein.

## JURISDICTION

11. This Court has original jurisdiction over this action, among other reasons, under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (1) the proposed Class is comprised of at least 100 members; (2) at least one member of the proposed class resides outside of Texas[2]; and (3) the aggregate claims of the putative class members exceed $5 million, exclusive of interests and costs.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendant is subject to personal jurisdiction here, regularly conducts business in this District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## PARTIES

13. Plaintiff Colin LaCrue is a citizen of Texas and resident of Amarillo, Texas. Plaintiff has maintained an account with Defendant for a 400Mbps High Speed Data plan during all relevant times alleged herein.

14. Defendant Vexus Fiber, LLC is an internet service provider operating in Texas, Louisiana, and Mexico with its headquarters in Lubbock, Texas. Vexus offers internet, phone, and tv-streaming services for both residential and business accounts.

---

[2] https://www.vexusfiber.com/service-areas/

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**A. Vexus Deceives Consumers by Advertising its Internet Service at a Fictitiously Low Price, and then Artificially Inflating the True Cost of its Internet Service by Adding a Mandatory, Useless Network Access Fee.**

15.     Vexus is an Internet Service Provider ("ISP") that proclaims itself as "a leading provider of high-speed fiber optic internet for homes and businesses."[3]

16.     Pertinent to this action, Vexus offers an array of fiber internet plans ranging in price dependent on varying degrees of internet speed (hereinafter collectively referred to as the "Internet Service").

17.     Upon information and belief, Vexus advertises sham low-prices for its Internet Service to consumers through various marketing channels, including, but not limited to, its website, online promotions, mailing flyers, and billboards.

18.     For example, on its website, Vexus prominently advertises a variety of Internet Service Plans:

---

[3] *See* Vexus Fiber, About Us, located at https://www.vexusfiber.com/residential/about-vexus/, (last accessed August 22, 2024).

Discover Better Internet



19. Once a user selects the "'Start Shopping" option, Vexus states that by entering their address, a customer can "Find the best offers in [their] area."



20. Once a customer inputs an address, Vexus then states that its Internet Service plans are either $29.99, $39.99, $49.99, or $89.99 per month.



21. Upon information and belief, in addition to the price represented in its advertisements, Vexus charges consumers a flat, monthly fee that Vexus characterizes as a "Network Access Fee" (the "NAF").

22. Vexus' NAF is currently $10 and is charged in addition to a consumer's regular monthly charge for their Internet Service.

23. The NAF purports to "provide access to the Vexus network and technology and enables us to continue to invest in our network and infrastructure to deliver the best technology and services to our customers."

24. If consumers are already paying for "access" to the Vexus network via their selected monthly Internet Service, then charging an additional fee—via the NAF—for that same "access," and providing nothing more, is demonstrative of the "junk" value of this fee.

7

25. Upon information and belief, Vexus does not utilize the revenue obtained from the NAF to invest in any specific customer's respective local network. Instead, Vexus applies these funds generally to their ever expanding "network," as they pursue new business opportunities in other states. Consumers never agreed to help pay for Vexus' business expansion—only their own Internet Service.

26. Further, upon information and belief, at no time does Vexus adequately advise consumers in its marketing materials prior to signing up with Vexus that their Internet Service includes the mandatory monthly NAF.

27. Vexus' NAF is nothing more than a hidden "junk fee." Vexus advertised a price for its Internet Service that did not include the NAF, but in reality, charged every consumer a higher monthly price that included the NAF. In this way, Vexus was able to advertise an artificially lower price for its Internet Service in order to acquire more customers.

28. Covertly applied fees like Vexus' NAF are unfair, deceptive, and misleading to consumers because they obstruct their ability to engage in true price comparisons and prevent them from participating in a fair and competitive marketplace. To illustrate, in 2022, Consumer Reports conducted a year-long study digging into the true cost of home internet services offered by numerous ISPs across the country (including Vexus) and concluded that consumers are paying exorbitant bills for broadband services, including through the assessment of "junk fees," like Vexus' NAF.[4]

---

[4] *See* Consumer Reports, Broadband Pricing: What Consumer Reports Learned from 22,000 Internet Bills, November 17, 2022, available at: *https://advocacy.consumerreports.org/wp-*

8

29. The study identified that "Company-Imposed Fees, aka Junk Fees" largely contributed to the widespread consumer confusion as to the true cost of internet services because they "make it difficult for consumers to budget and compare prices with alternative service options":[5]

> ***Fees.*** ISPs charge a wide range of fees that, together, can add up to a significant portion of the overall cost of service and contribute to the confusion around internet pricing. . . . The unavoidable fees are especially problematic because consumers may belief they are government-imposed when, in fact, many are company-imposed and distinguished from the core service price at the provider's discretion. More than a dozen ISPs were found to charge company-imposed fees—also known as junk fees—under names such as "network enhancement fee," "internet infrastructure fee," "deregulated administration fee," and ***"technology service fee."*** They can surprise consumers when they appear on monthly bills, and can enable providers to raise prices without seeming to violate marketing or contractual price commitments.[6]

30. The danger of junk fees like Vexus' NAF in the broadband market is palpable: "Such fees do a disservice to consumers by muddying the true price of broadband, making it difficult for consumers to compare prices, creating a pretext for providers to advertise low base rates while actually charging higher prices, and enabling providers to raise prices while superficially appearing to honor lower introductory or contractually promised base rates."[7]

**B. Plaintiff's Experiences**

31. In or around March 2024, Plaintiff signed up for the Vexus' Internet Service for his home located in Amarillo, Texas.

---

*content/uploads/2022/11/FINAL.report-broadband.november-17-2022-2.pdf* (last accessed July 18, 2024).

[5] *Id.* at p.3.
[6] *Id.* at p.4 (emphasis added).
[7] *Id.* at p. 23.

32. In reliance on Vexus' representations made in its advertisements and marketing materials regarding the low-price of Defendant's service, Plaintiff opened an account with Vexus and purchased the Internet Service for the price of $49.99 per month.

33. Upon information and belief, Plaintiff was exposed to Defendant's representations regarding its Internet Service via mailing flyers sent to him.

34. Based on Vexus' advertisements, Plaintiff selected Vexus' Service because its advertised price of $49.99 was the best price he found after comparing the services offered by similar service providers and he believed she was getting the better value by signing up for Vexus' Internet Service.

35. However, the true cost of the Internet Service was artificially inflated as a result of Defendant's assessment of its mandatory NAF in the amount of $10.00 per month.

36. Plaintiff did not discover the NAF until he received his monthly bill reflecting the Fee.

37. Plaintiff would not have signed up for Vexus' Internet Service had she known that the true cost of its Service was not truly $49.99 per month.

38. If Plaintiff had known the true cost of the Vexus Internet Service, he would have chosen another service provider.

### C. Vexus Continues its Unlawful Misconduct Despite Consumer Complaints

39. Plaintiff's experiences are far from outliers, as various complaints online demonstrate that consumers have similarly been misled by Vexus' misconduct:



**r/VexusFiber** • 6 mo. ago
macphoto469

## Why the deceptive pricing?

Vexus advertises a year-one price of $69.99 for 1gig fiber. But when you go to place the order, you are then presented with an additional $10 "network access fee", bringing the price to $79.99. Taxes and other government fees, fine, everyone expects those to be added on. But a mandatory company-imposed fee like this is deceptive.

If the price is $79.99, that's the price you should show.

And also consider taking a page from AT&T's playbook by stopping the churn-inducing practice of promotional pricing.



**r/VexusFiber** • 6 mo. ago
ng4ever

## Is $69.99 the set price for 1 Gbps up and down ?

Anything extra ?

↑ 1 ↓     💬 6     ↗ Share

➕ Add a Comment

Sort by: Best ⌄     🔍 Search Comments



macphoto469 • 6mo ago

Plus a $10 "network access fee". I find that quite annoying and deceptive... if the price is $79, just say $79, don't say $69 and then add on a mandatory $10 fee.

11



**Initial Complaint**
05/29/2024

**Complaint Type:** Order Issues
**Status:** Resolved

I signed up with Vexus Fiber for internet after a young man came to our house and offered an internet package for $39.99 per month. He stated repeatedly that the monthly charge would be $39.99 and not more than that for six months and that If I renewed with Vexus Fiber after six months the price would remain $39.99. Last week I discovered that my Vexus bill is $49.99 and I called Vexus twice and they will not change the monthly charge. They state there is an additional $10 fee for internet that they have to charge. However, the intial door-to-door salesman ensured me that my monthly charge would $39.99. He never mentioned any other fees or charges. This is a deceptive and misleading and dishonest sales practice.

## **CLASS ALLEGATIONS**

40. Pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"), Plaintiff brings this action individually on behalf of himself and as a class action of similarly situated persons (the "Class"), as specifically defined below:

> All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, held an account for an Internet Service with Vexus and were assessed a Network Access Fee.

41. Excluded from the Class is Defendant, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees, and members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiff reserves the right to expand, modify, or amend the class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

42. This case is appropriate for class treatment because Plaintiff can prove the elements of his claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

43. **Numerosity**. At this time, Plaintiff does not know the exact size of the Class; however, due to the nature of the trade and commerce involved, Plaintiff believes that the Class members are well into the thousands, and thus, are so numerous that joinder of all members is impractical. The number and identities of the members of the Class is administratively feasible and can be determined through appropriate discovery in the possession of the Defendant.

44. **Common Questions of Law and Fact Predominate**: There are many questions of law and fact common to Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of law and fact include:

   a. Whether during the class period, Defendant deceptively misrepresented and/or omitted the true cost of its Internet Service to consumers through the addition of its mandatory NAF;

   b. Whether Defendant's alleged misconduct misled or had the tendency to mislead consumers;

   c. Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

  d. Whether Plaintiff and members of the Class were harmed by Defendant's misrepresentations and omissions;

  e. Whether Defendant was unjustly enriched;

  f. Whether Plaintiff and the Class have been damaged, and if so, the proper measure of damages; and

  g. Whether an injunction is necessary to prevent Defendant from continuing to engage in the wrongful conduct described herein.

45. **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and all members of the Class have been similarly affected by the actions of Defendant as alleged above.

46. **Adequacy of Representation**: Plaintiff is committed to pursuing this action and has retained counsel competent and experienced in prosecuting and resolving consumer class actions. Plaintiff will fairly and adequately represent the interests of the Class and does not have any interests adverse to those of the Class.

47. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Class is impractical. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and

the fair and equitable handling of all Class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the Class members.

48. Class action treatment is proper, and this action should be maintained as a class action because the risks of separate actions by individual members of the Class would create a risk of: (a) inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Vexus as the party opposing the Class; and/or (b) adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class members not party to the adjudication or would substantially impair or impede their ability to protect their interests.

49. Plaintiff and the members of the Class suffered and will continue to suffer harm as a result of Defendant's wrongful conduct. Vexus has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

**FIRST CLAIM FOR RELIEF**
**Violation of the Texas Deceptive Trade Practices Act**
**Tex. Bus. & Comm. Code § 17.46,** *et seq.*

50. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

51. Prior to the filing of this Petition, Plaintiff gave Defendant written notice of their DTPA claims pursuant to Tex. Bus. & Comm. Code § 17.505 *et seq.*

15

52. The DTPA provides additional protections to consumers who are victims of deceptive, improper, illegal or unconscionable practices. Defendant's violations include, but are not limited to, misrepresenting its NAF; misrepresenting the true cost of its Internet Service; and covertly adding its NAF to its Internet Service without adequate or fair disclosure. *See* Texas Business & Commerce Code § 17.46(b)(24).

53. Defendant's violations induced Plaintiff into purchasing Vexus' Internet Service. *Id*. Plaintiff relied on this deception to their detriment. *See* Texas Business & Commerce Code § 17.50(a)(1)(B).

54. Vexus' violations were willful and were done was part of a scheme, artifice, or device with intent to defraud, mislead, and therefore are incurable deceptive acts under the DTPA.

55. In addition, Defendant's course of action violates the DTPA because it is unconscionable: Defendant took advantage of the Plaintiff's lack of knowledge, ability, experience, or capacity to a grossly unfair degree. *See* Texas Business & Commerce Code §§ 17.45(5), 17.50(a)(3).

56. Had Plaintiff and the members of the Class been aware that they were going to be charged the NAF, Plaintiff and members of the Class would not have entered into such a relationship with Vexus and would not have paid the NAF.

57. As a direct and proximate result of Defendant's unfair and deceptive acts and practices in violation of the DTPA, Plaintiff and members of the Class have

16

paid more for Vexus' service than they should have and have suffered monetary damages for which Defendant is liable.

58. Plaintiff and members of the Class seek actual damages plus interest on damages at the legal rate, as well as all other just and proper relief afforded by the DTPA. As redress for Defendant's repeated and ongoing violations, Plaintiffs and members of the Class are entitled to, *inter alia,* actual damages, treble damages, attorney's fees, and injunctive relief. *See* Texas Business & Commerce Code § 17.50(b)(1).

## SECOND CLAIM FOR RELIEF
### Unjust Enrichment

59. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

60. To the detriment of Plaintiff and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

61. Plaintiff and the Class conferred a benefit on Defendant.

62. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

63. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

64. Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court:

(a) Certification for this matter to proceed as a class action on behalf of the Class;

(b) Declaring Defendant's practices to be unlawful;

(c) For declaratory and injunctive relief as set forth above;

(d) For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(e) For compensatory damages according to proof;

(f) For punitive damages according to proof;

(g) For reasonable attorneys' fees and costs of suit;

(h) For pre-judgment interest; and

(i) Awarding such other and further relief as this Court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: November 12, 2024

Respectfully submitted,
**THOMPSON LAW LLP**
3300 Oak Lawn Avenue, 3rd Floor
Dallas, Texas 75219
Tel. 214/755-7777
Fax 214/716-0116

/s/ Ryan L. Thompson
**RYAN L. THOMPSON**
State Bar No. 24046969
rthompson@triallawyers.com
**RYAN H. ANDERSON**
State Bar No. 24059380
randerson@triallawyers.com

*Attorneys for Plaintiffs*


**JENNINGS PLLC**
Tyler B. Ewigleben*
Christopher D. Jennings*
500 President Clinton Avenue
Suite 110
Little Rock, AR 72201
Telephone: (317)-695-1712
tyler@jenningspllc.com
chris@jenningspllc.com

**KALIELGOLD PLLC**
Jeffrey Kaliel*
jkaliel@kalielpllc.com
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Tel: (202) 350-4783

Sophia Gold*
sgold@kalielgold.com
490 43rd Street, No. 122
Oakland, California 94609
Tel: (202) 350-4783

*Attorneys for Plaintiffs*

**Pro hac vice to be submitted*

19